**VUNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————————————

**PHILADELPHIA INDEMNITY INSURANCE**
**COMPANY,**

                    Plaintiff,

        - against –

**HOROWITZ, GREENER & STENGEL, LLP;**
**BARRY W. HOROWITZ; ROBERT L. GREENER,**
**and ADAM M. STENGEL,**

                    Defendants.
————————————————————————————


**03 Civ. 5510 (JGK)**

**OPINION & ORDER**



————————————————————————————

**HOROWITZ, GREENER & STENGEL, LLP;**
**BARRY W. HOROWITZ; ROBERT L. GREENER,**
**and ADAM M. STENGEL,**

                    Third-Party Plaintiffs,

        - against –

**LUSTGARTEN ASSOCIATES, INC.,**

                    Third-Party Defendants.

————————————————————————————

**JOHN G. KOELTL, District Judge:**

                              - 1 -

The plaintiff, Philadelphia Indemnity Insurance Company ("PIIC"), brings this diversity action seeking a declaratory judgment that an insurance policy issued to the defendants/third-party plaintiffs, the law firm of Horowitz, Greener, & Stengel ("HGS") and its members, Barry Horowitz ("Horowitz"), Robert Greener ("Greener"), and Adam Stengel ("Stengel"), is void and that the policy does not cover a claim that HGS filed in response to an action brought against HGS and Horowitz by a former client of HGS (the "Unger claim"). HGS, Horowitz, Greener, and Stengel have filed a third-party complaint against Lustgarten Associates, Inc. ("Lustgarten Inc."), the broker who procured the policy for them, alleging that if the policy at issue does not cover the Unger claim, it is because of the negligence of Lustgarten Inc., and seeking that Lustgarten Inc. be held liable for all or a portion of any damages that the plaintiff recovers from the defendants/third-party plaintiffs in this action.[1] The defendants/third-party plaintiffs now move for summary judgment dismissing all claims against them. The plaintiff cross-moves for summary judgment on all claims against the defendants/third-

---

[1] There is complete diversity of citizenship between the plaintiff and the defendants/third-party plaintiffs. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the third-party claims. <u>See Caterpillar, Inc. v. Lewis</u>, 519 U.S. 61, 66 n.1 (1966); <u>Gonzales v. Wal-Mart Stores, Inc.</u>, 299 F.Supp.2d 189, 190 n.1 (S.D.N.Y. 2004).

party plaintiffs.  Lustgarten Inc. moves for summary judgment dismissing all claims against it, which the defendants/third-party plaintiffs and the plaintiff oppose.

I.

The standard for granting summary judgment is well established.  Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).  "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.  The moving party bears the initial burden of informing the district court of the basis for its motion and identifying the matter that it believes demonstrates the absence of a genuine issue of material

- 3 -

fact.  <u>Celotex</u>, 477 U.S. at 323.  The substantive law governing

the case will identify those facts that are material and "only

disputes over facts that might affect the outcome of the suit

under the governing law will properly preclude the entry of

summary judgment."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

242, 248 (1986); <u>see also</u> <u>Consol. Edison, Inc. v. Northeast</u>

<u>Utilities</u>, 332 F.Supp.2d 639, 642 (S.D.N.Y. 2004).

Summary judgment is appropriate if it appears that the non-

moving party cannot prove an element that is essential to the

non-moving party's case and on which it will bear the burden of

proof at trial.  <u>See</u> <u>Cleveland v. Policy Mgt. Sys. Corp.</u>, 526

U.S. 795, 805-06 (1999); <u>Celotex</u>, 477 U.S at 322; <u>Powell v. Nat.</u>

<u>Bd. of Med. Exam'rs</u>, 364 F.3d 79, 84 (2d Cir. 2004).  In

determining whether summary judgment is appropriate, a court must

resolve all ambiguities and draw all reasonable inferences

against the moving party. <u>See</u> <u>Matsushita Elec. Indus. Co. v.</u>

<u>Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citing <u>United</u>

<u>States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962)); <u>see also</u>

<u>Gallo</u>, 22 F.3d at 1223.  Summary judgment is improper if there is

any evidence in the record from any source from which a

reasonable inference could be drawn in favor of the nonmoving

party.  <u>See</u> <u>Chambers v. T.R.M. Copy Ctrs. Corp.</u>, 43 F.3d 29, 37

(2d Cir. 1994).  If the moving party meets its initial burden of showing a lack of a material issue of fact, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible."  Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998); Consol. Edison, 332 F.Supp.2d at 643.


                              II.

     The following facts are undisputed unless otherwise noted.

     HGS is a professional limited liability company organized under New York law.  (Defendant's/Third-Party Plaintiff's Statement of Material Facts ("Def. Stmt.") ¶ 2; Counterstatement of Material Facts to Defendant's Rule 56.1 Statement ("Pl. Stmt.") ¶ 2.)  HGS was formed in July 2000, initially as a limited liability partnership under New York law, by its three members: Horowitz, who maintained a plaintiff's personal injury practice, Greener, who maintained a commercial litigation and corporate practice, and Stengel, who maintained a collections

                            - 5 -

practice and a limited personal injury practice. (Def. Stmt. ¶¶ 2, 4; Pl. Stmt. ¶ 2.) The three attorneys combined their respective practices to form a partnership in order to provide each other with support and calendar coverage, share expenses, and expand each individual attorney's pool of clients. (Def Stmt. ¶ 5; Pl. Stmt. ¶ 5.) Each individual maintained his own individual practice and caseload, and the responsibilities for files remained with each respective attorney. (Def. Stmt. ¶ 5; Pl. Stmt. ¶ 5.) The attorneys attended meetings one to three times each month to discuss ongoing matters related to the firm's finances or, less frequently, issues that arose in cases. (July 12, 2004, Deposition of Robert L. Greener ("Greener Dep.") at 25-26.) The attorneys met once each week to coordinate calendars. (June 29, 2004, Deposition of Barry W. Horowitz ("Horowitz Dep.") at 64-65.)

In the summer of 2000, HGS contacted Tobin Guy Lustgarten ("Lustgarten") of Lustgarten Inc., an independent New York insurance broker, to obtain legal malpractice insurance. (Lustgarten's Rule 56.1 Statement of Material Facts ("Lustgarten Stmt.") ¶¶ 1-2; Lustgarten Counter Rule 56.1 Statement of Material Facts in Response to Defendants' Rule 56.1 Statement ("Lustgarten Counterstatement") ¶ 1; Def. Stmt. ¶ 3, 6; Pl. Stmt.

¶ 3, 6.)  Lustgarten submitted an application for professional

liability insurance, signed by Stengel and dated August 25, 2000,

to Philadelphia Indemnity Insurance Company ("PIIC"), a

corporation organized under Pennsylvania law authorized to

conduct business within New York.  (Def. Stmt. ¶ 1, 7; Pl. Stmt.

¶ 7; Lustgarten Stmt. ¶ 3.)  PIIC issued a "claims made" Lawyers

Professional Liability Policy, number HLP0008097, to HGS,

effective July 25, 2000, through July 25, 2001.  (Def. Stmt. ¶ 7;

Pl. Stmt. ¶ 7; Lustgarten Stmt. ¶ 4.)

The policy contained the condition precedent to the

availability of coverage that, in the event that a claim was made

against the insured, the insured, "must give prompt written

notice to the Company." ("Condition I")  (2000-2001 Policy,

attached at Ex. B to PIIC Supplemental Submission, dated May 24,

2005.)

However, breach of this condition would not result in a

denial of coverage "with respect to any INSURED who had no

knowledge of the CLAIM." (Id.)  The policy contained the

additional condition regarding the reporting of potential claims:

> "If, during the POLICY PERIOD, any INSURED first becomes aware
> of a potential CLAIM (i.e. any WRONGFUL ACT or PERSONAL
> INJURY which might reasonably give rise to a CLAIM against
> any INSURED under this policy) and gives written notice of

such WRONGFUL ACT or PERSONAL INJURY to the Company during
the POLICY PERIOD, any CLAIMS subsequently made against any
INSURED arising out of that WRONGFUL ACT or PERSONAL INJURY
shall be considered to have been made during the POLICY
PERIOD."
("Condition III") (Id.)

Furthermore, the policy contained the following exclusions:

"This policy does not apply to: A. any CLAIM against any
INSURED where an INSURED has committed any criminal,
dishonest, fraudulent or malicious WRONGFUL ACT or PERSONAL
INJURIES. B. any CLAIM arising out of any WRONGFUL ACT or
PERSONAL INJURY occurring prior to the effective date of
this policy if (a) the matter had previously been reported
to any insurance company or (b) if the INSURED at the
effective date knew or could have reasonably foreseen that
such WRONGFUL ACT or PERSONAL INJURY might be expected to
be the basis of a CLAIM, provided, however, that subsection
B does not apply to any INSURED who had no knowledge of or
could not have reasonably foreseen that any such WRONGFUL
ACT or PERSONAL INJURY might be expected to be the basis of
a CLAIM."

("Exclusion A" and "Exclusion B," respectively) (2000-2001
Policy at 3.)
    The policy defined a "Claim" as "a demand made upon any
INSURED for DAMAGES, including, but not limited to, service of
suit or institution of arbitration proceedings against any
INSURED."  (Id.)  The policy defined a "Wrongful Act" as "any
actual or alleged: a) act; b) error; c) omission; d)
misstatement; e) misleading statements; or f) neglect or breach
of duty."  (Id.)
    In July 2000, Horowitz began to represent the plaintiff,
Daniel Unger ("Unger"), in an action entitled Unger v. Dover
Union Free School District in the New York State Supreme Court,
Dutchess County.  (Def. Stmt. ¶ 15; Pl. Stmt. ¶ 15.)  On June 6,
2001, the New York State Supreme Court issued an Order (the "June
6, 2001 Order") imposing a $400 sanction against Unger for
failing to respond to court-ordered discovery demands, finding
Unger's actions "willful, contemptuous and in bad faith."  (Order
dated June 6, 2001 ("June 6, 2001 Order"), at 3, attached at Ex.
M to Pl. Stmt.)  The June 6, 2001 Order stated that Unger's

Complaint would be dismissed unless Unger submitted responses to the defendant's discovery demands within fifteen days. (Id.)

On or about July 16, 2001, Greener notified Lustgarten of a claim against Greener and HGS entitled Probert v. Robert L. Greener et al. Lustgarten requested information in writing and forwarded notice of the claim to PIIC. (Greener Dep. at 98-101, 105-06.)

On or about July 19, 2001, HGS submitted a renewal application for their policy with PIIC. (See Pl. Stmt., Ex. I.) The renewal application's question 6(b) asked:

"Is any attorney aware of any claim, circumstance, incident, act or omission during the last year, which might reasonably be expected to be the basis of a claim or suit arising out of the performance of professional services for others?… If Yes, a Supplement Claim Information form must be completed.  NOTE: If you have not previously notified Philadelphia Insurance Companies of this claim, circumstance, incident, act or omission, contact the Philadelphia Insurance Companies Professional Liability Claims Department immediately."

(Id. at 2.)

The defendants/third-party plaintiffs answered "Yes" to question 6(b), but did not attach a Supplemental Claim Information Form as requested. (Id.) Greener signed the renewal application form. (Id. at 3.) Greener then sent the renewal application to Lustgarten, who submitted it to PIIC. (See Lustgarten Stmt., ¶¶ 8, 9, Affidavit of Ellen Nimaroff, sworn to Sept. 24, 2004 ("Nimaroff Aff."), Exs. E, G.) After receiving the renewal application, PIIC issued a "claims-made" Lawyers Professional Liability Policy, PHSD 013434, which was identical in its terms, conditions, and exclusions to the 2000-2001 policy, and which was effective July 25, 2001, through July 25, 2002. (Def. Stmt. ¶ 8; Pl. Stmt. ¶ 8; Lustgarten Counterstatement, ¶ 2)

On December 3, 2001, the New York State Supreme Court issued an Order (the "December 3, 2001 Order") dismissing the Complaint in Unger v. Union Free School District for "fail[ure] to comply with this Court's Order dated June 6, 2001 in a complete and timely manner." (Order dated Dec. 3, 2001, attached at Ex. N. to Pl. Stmt.) Horowitz did not disclose the dismissal to Unger. (Def. Stmt. ¶ 17; Pl. Stmt. ¶ 17.) Horowitz filed a notice of appeal, but did not perfect the appeal. (Def. Stmt. ¶ 17; Pl. Stmt. ¶ 17.) Horowitz did not discuss the matter with Stengel or

Greener.  (Def. Stmt. ¶ 17; Pl. Stmt. ¶ 17.)  On May 9, 2002,
Unger discharged Horowitz.  (See Letter from Bruce J. Ressler
dated May 9, 2002 ("Ressler Letter"), attached at Ex. O to Pl.
Stmt.)  In a letter to Horowitz dated May 9, 2002, Unger's
attorney advised Horowitz that Unger was discharging him "for
cause, in light of the fact that [Horowitz] handled his… lawsuit
so poorly that it was dismissed by the Court."  (Ressler Letter.)
Greener received the letter on May 9, 2002, and in subsequent
weeks Greener, Horowitz, and Stengel discussed the letter.
(Greener Dep. at 26-27; June 18, 2004 Deposition of Adam M.
Stengel ("Stengel Dep.") at 66-67.)  The defendants/third-party
plaintiffs allege that Stengel notified Lustgarten of the
incident over the telephone between May 9, 2002 and July 3, 2002,
and that Stengel discussed the matter with Lustgarten in a
meeting in August 2002 and in several conversations between
August 2002 and October 2002.  (Def. Stmt. ¶¶ 20-21, 37-38.)
Lustgarten Inc. denies this, and alleges that Lustgarten was not
notified of the Unger incident by the defendants/third-party
plaintiffs until Fall of 2002.  (Lustgarten Counterstatement, ¶¶
4-5, 12-13; Nimaroff Aff., Ex. R; July 19, 2004 Deposition of
Tobin Guy Lustgarten ("Lustgarten Dep.") at 111, attached at Ex.
A to Nimaroff Aff.)

     On or about June 11, 2002, Michele Robles Colon, an employee
of Lustergarten Inc., sent Stengel a facsimile transmission of a
three page renewal application for HGS's PIIC policy for 2002-
2003 (the "2002-2003 renewal application"), which was identical
to the 2001-2002 renewal application.  (Def. Stmt. ¶ 21;
Lustgarten Counterstatement ¶ 5.)  Robles Colon also sent Stengel
a twelve page application for a new policy with Liberty Mutual
Insurance to be completed.  (Def. Stmt. ¶ 21; Lustgarten
Counterstatement ¶ 5.)  Question 6(a) on the PIIC renewal
application asked if, during the last year, any attorney at the
firm had been "the subject of a reprimand, disciplinary action or
investigation or been refused admission to the bar by any
association, court or administrative agency."  (Pl. Stmt., Ex. Q
at 2.)  Unlike the previous renewal application, where there was
no answer to question 6(a), Stengel checked the box marked "Yes."
(Id.)  In the space provided after question 6(a), Stengel
explained that "[a] disciplinary complaint was filed against
Barry Horowitz by a former client and a hearing will take place
on 7-3-02."  (Id.)  The disciplinary complaint to which Stengel
referred was the result of a dispute with a former client,

Victoria Kremin, and was unrelated to the Unger incident.  (Pl. Stmt. Ex. II.)

Stengel also answered question 6(b) of the renewal application affirmatively, as he had done the previous year. (Id.)  Like the 2001-2002 renewal application, the 2002-2003 renewal application required that a Supplemental Claim Information form be attached if the applicant answered question 6(b) affirmatively.  (Id.)  On June 24, 2002, Horowitz completed and signed a Supplemental Claim Form with regard to the Unger incident.  (Def. Stmt. ¶ 26; Pl. Stmt. ¶ 26, Ex. Q; Lustgarten Counterstatement, ¶ 6.)  Greener also completed a Supplemental Claim Form with regard to the Probert incident.  (Pl. Stmt., Ex. Q.)  The Supplemental Claim Forms, however, had Liberty Mutual Insurance logos on their upper left-hand corner, and had no indication that they pertained to question 6(b) of the 2002-2003 PIIC renewal application.  (Def. Stmt. ¶ 26; Pl. Stmt. ¶ 26, Ex. Q; Lustgarten Counterstatement, ¶ 6.)  Stengel sent the 2002-2003 PIIC renewal application, the Liberty Mutual Insurance application, and the Supplemental Claim Forms with the Liberty Mutual Insurance logos, to Robles Cohen in one facsimile transmission on July 3, 2002.  (Def. Stmt. ¶ 27; Lustgarten Counterstatement, ¶ 7.)  The defendants/third-party plaintiffs allege that the Supplemental Claim Forms were placed after the 2002-2003 PIIC renewal application and before the Liberty Mutual Insurance application.  (Def. Stmt. ¶ 27.)  Lustgarten Inc. denied this allegation, and alleges that the Supplemental Claim Forms were placed in the middle of the Liberty Mutual Insurance application.  (Lustgarten Counterstatement, ¶ 7; Nimaroff Aff., Ex. J.)  Robles Cohen received the fax and split it into two parts, sending the 2002-2003 PIIC renewal application to PIIC without any Supplemental Claim Forms attached, and sending the Liberty Mutual Insurance Application to Liberty Mutual with the Supplemental Claim Forms completed by Horowitz and Greener attached.  (Def. Stmt. ¶ 28; Pl. Stmt. ¶ 28; Lustgarten Counterstatement ¶ 8.)  Robles Cohen did not review the submissions to PIIC or Liberty Mutual Insurance for accuracy or completeness.  (Def. Stmt. ¶ 28; Pl. Stmt. ¶ 28; Lustgarten Counterstatement ¶ 8.)

The submission to PIIC was received by Katie Molitor, an Assistant Underwriter at PIIC.  (Def. Stmt. ¶ 29; Pl. Stmt. ¶ 29.)  Molitor did not have the 2001-2002 renewal file available for review as is PIIC standard underwriting procedure.  (Def. Stmt. ¶ 29; Pl. Stmt. ¶ 29.)  Molitor reviewed the available

underwriting files and claim history computerized records and discussed the reported claims history, including the Probert claim made on the 2001-2002 policy, which was since closed, with an adjuster. (Def. Stmt. ¶ 29; Pl. Stmt. ¶ 29.) Molitor did not have the authority to issue a quote on an account that had a claims history, but submitted a quote to her supervisor, Howard Goldstein, who approved her issuing a conditional proposal to HGS. (Def. Stmt. ¶ 33; Pl. Stmt. ¶ 32, 33.) The conditions of the proposal were that: 1) the insured date the application, and 2) the insured, "[i]n response to question #6… provide details regarding the outcome of the court hearing scheduled for July 3, 2002." (Def. Stmt. ¶ 34; Pl. Stmt. ¶ 34, Ex. HH; Lustgarten Counterstatement ¶ 10.) The conditional proposal was extended to HGS in writing through Lustgarten, and HGS signed and dated the application and provided the requested information to Lustgarten, who forwarded it to PIIC. (Def. Stmt. ¶¶ 34, 35; Pl. Stmt. ¶¶ 34, 35, Ex. II; Lustgarten Counterstatement ¶ 10.) PIIC did not request any additional information. (Def. Stmt. ¶¶ 35, 36; Pl. Stmt. ¶¶ 35, 36, Lustgarten Counterstatement ¶ 11.)

On August 13, 2002, PIIC issued professional liability policy PHSD 035332 to HGS, which was effective July 25, 2002, through July 25, 2003 (the "2002-2003 policy"). (Def. Stmt. ¶¶ 35, 36; Pl. Stmt. ¶¶ 35, 36, Lustgarten Counterstatement ¶ 11.) The policy was identical in its terms, conditions, and exclusions to the 2000-2001 policy and the 2001-2002 policy. However, as explained below, the defendants/third-party plaintiffs allege that they never received the section of the 2002-2003 Policy containing relevant exclusions and definitions. (Letter from Adam M. Stengel, dated May 25, 2005, and attachments ("Stengel Ltr.").) The policy was mailed to HGS by Lisa Lilly, an underwriting assistant of Molitor. (Def. Stmt. ¶ 36; Pl. Stmt. ¶ 36; Lustgarten Counterstatement ¶ 11.) As part of the mailing procedure, Lilly completed a "policy mail out checklist," indicating that she had "review[ed] application to ensure that all applications questions have been answered." (Nimaroff Aff., Ex. L; Def. Stmt. ¶ 36; Pl. Stmt. ¶ 36; Lustgarten Counterstatement ¶ 11.)

At her deposition, Molitor testified that at the time she reviewed the HGS 2002-2003 renewal application, she used the PIIC Professional Liability Underwriting Guidelines (the "Guidelines") to review renewal applications. (July 14, 2004, Deposition of Katie Molitor ("Molitor Dep.") at 19-21; PIIC Professional Liability Underwriting Guidelines ("Guidelines"), attached at Ex.

S to Pl. Stmt.)  She testified that all PIIC underwriters had the authority to consider the facts and circumstances of each application, and were not bound by the Guidelines.  (Id. at 104.)  In the case of HGS, Molitor deviated from question 27 of the Guidelines, which requires underwriters to deny coverage for any application with a claims history.  (Guidelines at 5; Def Stmt. ¶ 30; Pl. Stmt. ¶ 30.)  At her deposition, Molitor testified that she had only denied offering terms for a renewal coverage to a firm with a claims history in one situation, in which the firm had filed six claims within a two-year renewal period.  (Molitor Dep. at 25.)

        In September 2002, Stengel and Greener decided to withdraw from the partnership and form a new partnership, resulting in two new entities: Greener & Stengel, LLP ("G&S"), and the Law Offices of Barry Horowitz ("Horowitz Office").  (Def. Stmt. ¶ 38; Pl. Stmt. ¶ 38; Lustgarten Counterstatement ¶ 13.)  Applications for insurance for both new entities were completed by the respective attorneys and submitted to Lustgarten.  (Def. Stmt. ¶ 38; Pl. Stmt. ¶ 38, Exs. AA, BB; Lustgarten Counterstatement ¶ 13.)  The applications both disclosed a potential claim against HGS by Unger dating back to the December 2001 Unger incident.  (Def. Stmt. ¶ 38, Pl. Stmt. ¶ 38, Exs. AA, BB.; Lustgarten Counterstatement ¶ 13.)  Both applications were submitted to insurance provider NIF/PRO, who requested additional information on the Unger matter with regard to both applications.  (Pl. Stmt., Exs. AA, DD.)  On September 23, 2002, Robles Cohen informed HGS that PIIC had declined the application of the Horowitz Office due to "areas of practice," and advised the partners of HGS not to dissolve the firm until new coverage was obtained.  (Pl. Stmt., Ex. CC.)  PIIC denies receiving the application for G&S, or the application for the Horowitz Office.  (Pl. Stmt., ¶ 38.)  On or about October 1, 2002, HGS ceased formal operations but, to date, HGS has not been formally dissolved under New York law.  (Def. Stmt. ¶ 2.)  Lustgarten procured an insurance binder for G&S through Liberty Mutual Insurance on or about October 25, 2002.  (Def. Stmt. ¶38; Pl. Stmt. ¶ 38; Lustgarten Counterstatement ¶ 13.)

        In December 2002, Unger filed a complaint against HGS and Horowitz for legal malpractice (the "malpractice complaint").  On January 15, 2003, Lustgarten faxed to PIIC a copy of the malpractice summons and complaint, which Lustgarten had received from Stengel.  (Pl. Stmt., Ex. X.)  PIIC provided a defense to HGS and Horowitz, subject to a reservation of rights contained in

a reservation of rights letter dated January 15, 2003 (the "reservation of rights letter"). (Pl. Stmt., Ex. Y.)

On July 25, 2003, PIIC initiated the present action against HGS, Horowitz, Greener, and Stengel. (Complaint, filed July 25, 2003 ("Compl."), attached at Pl. Stmt., Ex. J.) The complaint states four causes of action. The first cause of action seeks a judicial determination that the defendants/third-party plaintiffs breached the terms of the 2001-2002 policy through their failure to notify PIIC of Horowitz's conduct in the <u>Unger</u> case, thus voiding coverage under that policy. (Compl. ¶¶ 14-44.) The second cause of action seeks a judicial determination that the defendants materially misrepresented facts in the submission of the 2002-2003 renewal application, and that therefore the 2002-2003 policy is void as a matter of law. (<u>Id.</u> ¶¶ 45-50.)[2] The third cause of action seeks a judicial determination that the 2002-2003 policy excludes coverage for the Unger claim because the defendants/third-party plaintiffs failed to disclose circumstances, incidents, acts or omissions, which reasonably might give rise to a claim or suit and because "at the effective date the attorneys at HGS knew or could have reasonably foreseen that the failure to provide adequate representation to Daniel Unger might be expected to be the basis of a claim…."[3] (<u>Id.</u> ¶ 60.) The fourth cause of action seeks a judicial determination that the 2002-2003 policy does not cover the Unger claim because the defendant/third-party plaintiffs acted in a dishonest matter by failing to disclose to Unger the dismissal of his claim in December 2001, and that the 2002-2003 policy is void as a matter of law. (<u>Id.</u> ¶¶ 61-68.)

On January 23, 2004, the defendants/third-party plaintiffs filed a third-party complaint against Lustgarten Inc. (Third-Party Compl., filed Jan. 23, 2004 ("Third-Party Compl.") The

---

[2] The Complaint had originally alleged that there were material misrepresentations in both the 2001-2002 and 2002-2003 renewal applications and that consequently the policies for both of those years were void. However, the claim was only made during the 2002-2003 policy year after the Unger complaint against Horowitz and HGS was filed in December 2002. At the argument of these motions, counsel for PIIC made it clear that the second cause of action was directed at alleged misstatements in the 2002-2003 renewal application that was the basis for the 2002-2003 policy and that the cause of action seeks to void the 2002-2003 policy. (Transcript of proceedings held May 20, 2005 ("Tr.") at 16.)

[3] Although the Complaint seeks a judicial determination that the policy is void, at oral argument counsel for the plaintiff stated that the third cause of action actually seeks judicial determination that the Unger claim falls within the policy exclusions. (Tr. at 16-17.)

first cause of action seeks a judicial determination that
Lustgarten Inc. was an agent of PIIC, that notice to Lustgarten
Inc. constituted notice to PIIC, and that any insufficiency of
information provided to PIIC regarding the defendants/third-party
plaintiffs was through the fault, carelessness, and negligence of
Lustgarten Inc.  (Id.)  The second cause of action asks the Court
to hold Lustgarten Inc. liable to the defendants/third-party
plaintiffs for all or a portion of any damages that the plaintiff
recovers against the defendants/third plaintiffs.  (Id.)

The defendants/third-party plaintiffs move for summary
judgment dismissing all claims against them.  PIIC has made a
cross-motion for summary judgment on all of its claims.
Lustgarten Inc. moves for summary judgment on all claims against
it.  PIIC and the defendants/third-party plaintiffs oppose
Lustgarten Inc.'s motion for summary judgment.

### III.
### A.
### 1.

The first cause of action seeks a judicial determination
that the defendants/third-party plaintiffs breached the terms of
the 2001-2002 policy through their failure to notify PIIC of
Horowitz's conduct in the Unger case, thus voiding coverage under
that policy.  (Compl. ¶ 14-44.)

At oral argument, counsel for PIIC conceded that the 2001-
2002 policy contained no duty to disclose potential claims as a
prerequisite to coverage of those claims.  (Transcript of
proceedings held May 20, 2005 ("Tr.") at 16.)  Counsel for PIIC
also conceded that, because the disclosure of potential claims
was not a prerequisite to coverage, there is no argument that the
2001-2002 policy is void.  (Id.)  It is plain that no reasonable
juror could find that the 2001-2002 policy is void.  Accordingly,
summary judgment is granted dismissing the first cause of action
against the defendants/third-party plaintiffs.

### 2.

The second cause of action seeks a judicial determination
that the defendants materially misrepresented facts in the
submission of its 2002-2003 renewal application, and that the
2002-2003 policy is void as a matter of law.  (Compl. ¶¶ 45-50.)

Under New York law,[4] an insurer may rescind an insurance policy that was issued in reliance upon a material misrepresentation. See Republic Ins. Co. v. Masters, Mater & Pilots Pension Plan, 77 F.3d 48, 52 (2d Cir. 1996); Wedtech Co v. Federal Ins. Co., 740 F.Supp. 214, 218 (S.D.N.Y. 1990). To rescind a policy of insurance, the insurer has the burden to prove that the applicant for insurance made a misrepresentation and that had the insurer known the truth it would not have issued the policy it did issue. See Vella v. Equitable Life Assurance Soc., 887 F.2d 388, 391 (2d Cir. 1989); Mutual Benefit Life Ins. Co. v. JMR Electronics Corp., 848 F.2d 30, 32-34 (2d Cir. 1988). The New York Insurance Law defines a "misrepresentation" as a false "statement as to past or present fact, made to the insurer by, or by the authority of, the applicant for insurance or the prospective insured, at or before the making of the insurance contract as an inducement to the making thereof." N.Y. Ins. Law § 3105(a). A misrepresentation may be a false affirmative statement or a failure to disclose where a duty to disclose exists. See Mutual Ben. Life Ins. Co. v. Morley, 722 F.Supp. 1048, 1051 (S.D.N.Y. 1989) (citing Vander Veer v. Continental Casualty Co., 312 N.E.2d 156, 157 (N.Y. 1974)). There is no duty to volunteer information unless a "question plainly and directly requires it to be furnished." Vella, 887 F.2d at 393. A misrepresentation is material if "knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer" to issue the exact policy the insurer did issue. N.Y. Ins. Law § 3105(b); Vella, 887 F.2d at 391.

PIIC argues that the defendants/third-party plaintiffs made a material misrepresentation on their 2002-2003 renewal application form on question 6(b). Although PIIC does not dispute that question 6(b) was answered affirmatively, PIIC argues that the lack of accompanying supplemental forms amounted to a misrepresentation that PIIC did not have any new potential claims that fell within question 6(b). PIIC alleges that, had it been aware of the potential Unger claim, which the parties do not dispute fell within the category of potential claims the defendants/third-party plaintiffs were required to report under

---

[4] The parties do not dispute that New York law should be applied and the Court can accept the agreement of the parties. See Hannex Corporation v. GMI, Inc., 140 F.3d 194, 203 n.7 (2d Cir. 1998); Bhandari v. The Trustees of Columbia University, No. 00 Civ. 1753, 2000 WL 310344, at *5 n.1 (S.D.N.Y. March 27, 2000).

question 6(b), PIIC would not have provided the policy that it did to the defendants/third-party plaintiffs.

Accepting all of PIIC's allegations as true, PIIC cannot show that the defendants/third-party plaintiffs made a material misrepresentation on the 2002-2003 renewal application.  It is undisputed that the defendants/third-party plaintiffs answered question 6(b) affirmatively, and that this answer was truthful. The issue is therefore whether the omission of the supplemental forms to question 6(b) providing the details of the incidents referred to in the answer to question 6(b) constituted a material misrepresentation.  It is well-settled that "where upon the face of [an insurance] application, a question appears to be not answered at all, or to be imperfectly answered, and the insurers issue a policy without further inquiry, they waive the want or imperfection in the answer, and render the omission to answer more fully immaterial." Phoenix Mutual Life Ins. Co. v. Raddin, 120 U.S. 183, 190 (1887); see also Krauss v. Manhattan Life Ins. Co. of New York, 700 F.2d 870, 872-74 (2d Cir. 1983) (under Illinois law, insurer estopped from denying $100,000 coverage reserved for full-time employees to part-time employee who paid premium for $100,000 coverage, was issued policy purporting to give $100,000 coverage, and was never asked if he was only part-time or informed that he had less coverage); Transamerica Premier Ins. Co v. Miller, 41 F.3d 438, 442-43 (9th Cir. 1998) (under Montana law, insurer's issuance of policy in face of what appears to be lack of sufficient information to allow insurer to determine its risk estops insurer from, or waives insurer's right to, cite that lack of information as ground for avoiding coverage).  Therefore, the omission of the supplemental forms required that PIIC request any additional information elaborating on the affirmative answer to 6(b).  The issuance of the insurance policy without any further inquiry into the affirmative answer provided to 6(b) estops PIIC from claiming that the policy is void because it did not receive the supplemental forms.  See Phoenix, 120 U.S. at 190; see also 44A Am.Jur.2d Insurance § 1603 ("Generally, where upon the face of an application a question appears to be imperfectly or incompletely answered, or not answered at all, the issuance of a policy without further inquiry waives the want of, of the imperfection in, the answer.  An insurer's issuance of a policy in the face of what appears to be a lack of sufficient information to allow the insurer to determine its risks… estops the insurer from, or waives the

insurer's right to, cite that lack of information as a ground for avoiding coverage.")

PIIC argues that it was not required to inquire about the supplemental information because "an insurer is entitled to rely on the representations of the insured and… is under no duty to investigate the truthfulness of the representations." <u>Variety Homes, Inc. v. Postal Life Ins. Co.</u>, 287 F.2d 320, 323 (2d Cir. 1961); **<u>Estate Funds, Inc. v. American General Life Co. of New York</u>**, No. 89 Civ. 6735, 1990 WL 124516, at *4 (S.D.N.Y. Aug. 20, 1990), <u>aff'd</u>, 953 F.2d 636 (2nd Cir. 1991). While it is true that PIIC had no duty to investigate the truthfulness of the answer to 6(b), it is undisputed that the defendants/third-party plaintiffs answered question 6(b) truthfully. The defendants/third-party plaintiffs failed to provide the requested supplemental information elaborating on their answer to question 6(b). Therefore, PIIC had a duty to request the supplemental information that the defendants/third-party plaintiffs neglected to include. Because PIIC issued a policy without requesting the omitted supplemental forms that would elaborate on the answers to question 6(b), PIIC is now estopped from arguing that the policy is void because it did not receive the supplemental forms. <u>See</u> <u>Phoenix</u>, 120 U.S. at 190; <u>Estate Funds</u>, 1990 WL 124516, at *4 (finding that, while life insurer was not required to investigate the statements of applicant, "where an insurer has some information which would prompt inquiry into the health of the proposed insured, the duty of inquiry is not discharged").

PIIC argues that the omission of supplemental forms to question 6(b) is a misrepresentation when it is viewed in the context of the affirmative answer to question 6(a). As described above, question 6(a) asks whether, during the last year, any attorney had been the subject of a reprimand, disciplinary action or investigation, or been refused admission to the bar by any association, court, or administrative agency, and, if the applicant answered yes, asked the applicant to explain in the space provided following the question. (Pl. Stmt. Ex. II.) On the 2002-2003 renewal application, Stengel answered the question affirmatively and, in the space provided, stated that "A disciplinary complaint was filed against Barry Horowitz by a former client and a hearing will take place on 7-3-02." (<u>Id.</u>) PIIC argues that, in processing the claims, Molitor noted the affirmative answers to questions 6(a) and 6(b) and concluded that they referred to the same matter because the questions "went hand-in-hand together." (Molitor Dep. at 69.) Based on this

assumption, Molitor asked for additional information only with regard to the incident described in question 6(a) and did not bring the missing supplemental forms to the attention of the defendants/third-party plaintiffs. (<u>Id.</u> at 66-69.)  PIIC argues that the defendants/third-party plaintiffs chose to answer questions 6(a) and 6(b) in such a way as to create a material misrepresentation on which PIIC relied when issuing the 2002-2003 policy to the defendants/third-party plaintiffs.  PIIC also points to question 6(c), which asks for details of any claims or circumstances closed during the past year or any reopened claims reported on any previous insurance application but does not require information for closed claims for which details were previously reported.  PIIC argues that question 6(c) creates the implication that affirmative answers to question 6(b) that are unaccompanied by the required supplemental forms refer to potential claims that have already been reported.  PIIC argues that it was therefore justified in assuming that, because the defendants/third-party plaintiffs did not provide a supplemental form for question 6(b), the affirmative answer to question 6(b) referred to a potential claim that had already been reported.

PIICs arguments are without merit.  Question 6(a) and 6(b) plainly ask for different types of information.  There is nothing in the 2002-2003 renewal application to suggest that questions 6(a) and 6(b) are related such that one would assume that an affirmative answer to both questions refers to the same incident unless the applicant states otherwise.  Moreover, the requirement to provide supplemental information in response to question 6(b) is without exception.  There is nothing in the application that suggests that, when the answers to questions 6(a) and 6(b) refer to the same incident, no supplemental forms are required for 6(b).  Similarly, there is nothing in the application form that suggests that, like question 6(c), the applicant need not provide supplemental forms for question 6(b) if the incident has already been reported.  Based upon the plain meaning of the application form and the responses given by the defendants/third-party plaintiffs, a reasonable juror could not conclude that the defendants/third-party plaintiffs had made a misrepresentation in their response to question 6(b).  Accordingly, summary judgment is granted dismissing the second cause of action against the defendants/third-party plaintiffs.

3.

The third cause of action seeks a judicial determination that the 2002-2003 policy excluded coverage for the Unger claim because the defendants/third-party plaintiffs failed to disclose circumstances, incidents, acts or omissions, which reasonably might give rise to a claim or suit, and because "at the effective date [the attorneys at HGS] knew or could have reasonably foreseen that the failure to provide adequate representation to Daniel Unger might be expected to be the basis of a claim…." (Compl. ¶ 60.)

As explained above, at oral argument, counsel for PIIC conceded that the policies contained no duty to disclose potential claims as a prerequisite to coverage of those claims. (Tr. at 16.)  However, Exclusion B of the 2002-2003 policy stated that the policy does not apply to,

"any CLAIM arising out of any WRONGFUL ACT or PERSONAL INJURY occurring prior to the effective date of this policy if (a) the matter had previously been reported to any insurance company or (b) if the INSURED at the effective date knew or could have reasonably foreseen that such WRONGFUL ACT or PERSONAL INJURY might be expected to be the basis of a CLAIM, provided, however, that subsection B does not apply to any INSURED who had no knowledge of or could not have reasonably foreseen that any such WRONGFUL ACT or PERSONAL INJURY might be expected to be the basis of a CLAIM." (2001-2002 Policy, attached to Stengel Ltr ("2001-2002 Policy").)[5]

The 2002-2003 Policy defines "wrongful act" as "any actual or alleged: a) act; b) error; c) omission; d) misstatement; e)

---

[5] The defendants/third-party plaintiffs do not dispute that the terms of the 2002-2003 Policy were identical to the terms of the 2000-2001 and 2001-2002 policies but they allege that they did not receive the section of the 2002-2003 Policy that provided the relevant definitions and exclusions.  (Stengel Ltr. and attachments)  Because the Court has not been provided a complete copy of the 2002-2003 Policy and the defendants/third-party plaintiffs do not dispute that the 2002-2003 Policy is identical to the previous policies, the Court cites the relevant sections of the 2001-2002 Policy.

misleading statements; or f) neglect or breach of duty." (2001-2002 Policy.)[6]

Following oral argument, the parties provided supplemental submissions to the Court. In their supplemental submissions, the defendants/third-party plaintiffs indicated that they had never received the section of the 2002-2003 Policy containing Exclusion B or the definition of a wrongful act. (Stengel Ltr.) Furthermore, the submissions from PIIC that contained the 2002-2003 Policy sent to the defendants/third-party plaintiffs also did not contain the 2002-2003 Policy exclusions and definitions. (See PIIC Supplemental Submissions, Ex. K.)

On its face, the exclusion appears to bar coverage for the Unger claim because the Unger claim arose when the demand for payment was made by the filing of the lawsuit in December 2002. However, that claim arose out of the prior wrongful acts resulting in the dismissal of the prior Unger lawsuit. In July 2002, on the effective date of the 2002-2003 policy, HGS was aware of the prior wrongful acts because HGS had been dismissed as Unger's counsel in May 2002, and indeed HGS had reported the Unger incident to Liberty Mutual in connection with an application for insurance in June 2002. However, to exclude

---

[6] See note 5.

coverage for the Unger claim based on the exclusion raises issues that have not been briefed, including whether exclusions from prior policies were to be incorporated into renewal policies.

The Court cannot grant summary judgment at this time because the parties have not briefed the significance of the defendants/third-party plaintiffs not having received a completed 2002-2003 Policy with the relevant exclusions and definitions. See **Mehlenbacher v. Akzo Nobel Salt, Inc.,** 216 F.3d 291, 297-98 (2d Cir. 2000); **Cromer Finance Ltd. v. Berger, No.** 00 Civ.2284, 2003 WL 21436164, at *13 (S.D.N.Y. June 23, 2003); **Emmpresa Cubana Del Tabaco v. Culbro Corp.,** 213 F.Supp.2d 247, 284 (S.D.N.Y. 2002). The cross motions for summary judgment on the third cause of action are denied without prejudice to renewal.

4.

The fourth cause of action seeks a judicial determination that the 2002-2003 policy does not cover the Unger claim because the defendants/third-party plaintiffs acted in a dishonest matter by failing to disclose to Unger the dismissal of his claim in December 2001, and that consequently the 2002-2003 policy is void as a matter of law. (Id. ¶¶ 61-69.)

As the plaintiff conceded at oral argument, there are material issues of fact as to whether the actions of the defendants/third-party plaintiffs constituted a sufficient act of dishonesty to void the policy. (Tr. at 4-5.) Therefore, summary judgment is denied as to the fourth cause of action.

5.

The defendants/third-party plaintiffs argue that summary judgment should be granted dismissing all claims against them individually. The defendants/third-party plaintiffs argue that this action is premature because a creditor must first exhaust the assets of a corporation. The defendants/third-party plaintiffs cite the proposition that, under New York law, in an action to satisfy or enforce a corporate liability, "[o]rdinarily a creditor of a corporation must exercise his remedy at law by obtaining a judgment against the corporation and by the return of execution unsatisfied," unless it is impossible for the creditor to obtain such a judgment. Sherrill Hardwood Lumber Co. v. New York Bottle Box Co., 195 N.Y.S. 22, 23 (Sup. Ct. 1922).

The reliance of the defendants/third-party plaintiffs on this legal principle is misplaced. This is not an action for a recovery of damages against a corporation. This is an action for

a declaratory judgment regarding the legal responsibilities of an insurer with respect to the insured. Accordingly, it is not premature for the Court to determine what, if any, responsibilities that PIIC has under its policies with respect to the defendants/third-party plaintiffs.

B.

Lustgarten Inc. argues that summary judgment should be granted dismissing all claims against it because Lustgarten Inc. performed all of the duties it owed to the defendants/third-party plaintiffs, and because any actions of Lustgarten Inc. were not the proximate cause of any damages allegedly sustained by the defendants/third-party plaintiffs.

The third-party complaint states two causes of action against Lustgarten Inc. The first cause of action seeks a judicial determination that Lustgarten Inc. was an agent of PIIC, that notice to Lustgarten Inc. constituted notice to PIIC, and that any insufficiency of information provided to PIIC regarding the defendants/third-party plaintiffs was through the fault, carelessness, and negligence of Lustgarten Inc. (Third-Party Compl. at 2-3.) The second cause of action asks the Court to hold Lustgarten Inc. liable to the defendants/third-party

plaintiffs for all or a proportion of any damages that the plaintiff recovers against the defendants/third plaintiffs. (Third-Party Compl. at 3-4.)

The first cause of action asserted by the defendants/third-party plaintiffs is without merit.  Under New York law, "an insurance broker is the agent of the <u>insured</u>, not the insurance company, and notice to an insurance broker, absent exceptional circumstances…, is not notice to the insurer."  <u>Howard Fuel v. Lloyd's Underwriters</u>, 588 F.Supp. 1103, 1108 (S.D.N.Y. 1984); <u>see also</u> <u>U.S. Underwriters Ins. Co. v. Vittorioso</u>, No. 97 CV 0075, 1999 WL 167716, at *2 (E.D.N.Y. Jan. 6, 1999); <u>Security Mut. Ins. Co. of New York v. Acker-Fitzsimons Corp.</u>, 293 N.E.2d 76, 79 n.3 (N.Y. 1972); <u>Shaw Temple A.M.E. Zion Church v. Mount Vernon Fire Ins. Co.</u>, 605 N.Y.S.2d 370, 371-72 (N.Y. App. Div. 1993).  Such exceptional circumstances have been found in situations where the agent's role "went far beyond that of solicitor of the liability policy," and included responsibilities such as collecting premiums, issuing the policy, and being designated as an "agent or broker" for the insurer.  <u>See</u>, <u>e.g.</u>, <u>Mighty Midgets, Inc. v. Centennial Ins. Co.</u>, 389 N.E.2d 1080, 1082 (N.Y. 1979).  For a broker to become the insurer's agent, there must be evidence of some action on the insurer's part from which a general authority

to represent the insurer may be inferred.  <u>U.S. Underwriters</u>,
1999 WL 167716, at *2; <u>Shaw Temple</u>, 605 N.Y.S.2d at 371.  There
is no evidence that PIIC took any such action with respect to
Lustgarten Inc.

The defendants/third-party plaintiffs point to deposition
testimony of Goldstein, who was the managing underwriter at PIIC
from October 2000 until 2004, stating that Lustgarten Inc. was an
agent of PIIC with regard to the HGS insurance policy.  (June 16,
2004 Deposition of Howard E. Goldstein ("Goldstein Dep.") at 131,
attached at Ex. D to Pl. Stmt.)  This statement constitutes a
conclusion of law that remains unsupported by any evidence and is
insufficient to overcome the principle of New York law that a
broker is not the agent of an insurer merely because the broker
procures a policy from that insurer, and that the insurer must
take some action from which the broker's agency may be inferred.[7]
Because the defendants/third-party plaintiffs cannot demonstrate
that Lustgarten Inc. was an agent of PIIC, summary judgment must

---

[7] Moreover, the meaning of Goldstein's statement is called into question by the
Goldstein's statement just prior to it in which he stated that "Lustgarten
[Inc.] is an independent broker, brokerage, or agency from us.  They submit
some business to us, and thus we have customers in common."  Goldstein Dep. at
131.  Goldstein used "agency" to refer to those cases where Lustgarten Inc.
"placed their policyholder's policy with [PIIC]."  <u>Id.</u>  But procuring a policy
from an insurer is insufficient to cause a broker to become an agent of the
insurer.  <u>See</u> <u>U.S. Underwriters Ins. Co.</u>, 1999 WL 167716 at *2; <u>Howard Fuel</u>,
588 F.Supp. at 1108; <u>Security Mut. Ins.</u>, 293 N.E.2d at 79 n.3; <u>Shaw Temple</u>, 605
N.Y.S.2d at 371-72.

be granted dismissing the first cause of action asserted against Lustgarten Inc. by the defendants/third-party plaintiffs.[8] See U.S. Underwriters Ins. Co., 1999 WL 167716 at *2; Howard Fuel, 588 F.Supp. at 1108; Security Mut. Ins., 293 N.E.2d at 79 n.3; Shaw Temple, 605 N.Y.S.2d at 371-72.

The second cause of action asserted by the defendants/third-party plaintiffs is also unsupported by New York law. Under New York law, an insurance agent or broker has the duty to obtain the requested coverage within a reasonable time or to inform the client of its inability to do so. Murphy v. Kuhn, 682 N.E.2d 972, 974 (N.Y. 1997); Empire Industrial Corp. v. Ins. Co of N. Am., 641 N.Y.S.2d 345 (App. Div. 1996); Barco Auto Leasing v. Montano, 627 N.Y.S.2d 705, 706 (App. Div. 1995). Absent a specific request for coverage or a level of coverage, an insurance agent or broker is not liable to an insured for any failure to procure a particular type or amount of coverage not already in the policy. Murphy, 682 N.E.2d at 975; Empire, 641 N.Y.S.2d at 345; Barco, 627 N.Y.S.2d at 706. Insurance agents have no continuing duty to advise, guide, or direct a client to

---

[8] To the extent that the first cause of action alleges that Lustgarten Inc. acted negligently in failing to inform PIIC of a potential claim against HGS, that claim cannot be based on a breach of any duty Lustgarten Inc. owed to PIIC because Lustgarten Inc. was not PIIC's agent. For the reasons explained below, Lustgarten Inc. also did not violate any duty it owed to HGS because Lustgarten Inc. had no duty in this case to report potential claims.

obtain additional coverage.  <u>Murphy</u>, 682 N.E.2d at 974; <u>Wied v.</u>
<u>New York Cent. Mut. Ins. Co.</u>, 618 N.Y.S.2d 467, 468 (App. Div.
1994); **Hjemdahl-Monsen v. Faulkner**, 611 N.Y.S.2d 309, 310 (App.
Div. 1994).  However, "[e]xceptional and particularized
situations may arise in which insurance agents, through their
conduct or by express or implied contract with customers and
clients, may assume or acquire duties in addition to those fixed
at common law."  <u>Murphy</u>, 682 N.E.2d at 975.  New York courts
rarely find such a relationship, but recognize an additional duty
in exceptional situations, such as where the agent receives
compensation for consultation beyond the premium payments, the
insured relies on expertise of the agent regarding a raised
question of coverage, or there is an extended course of dealing
sufficient to put objectively reasonable agents on notice that
their advice was being relied upon.  <u>See</u> <u>id.</u> at 975-96; <u>see</u> <u>also</u>,
**Curanovic v. New York Cent. Mut. Fire Ins. Co.,** 762 N.Y.S.2d 148, 151-52
(App. Div. 2003); **M & E Mfg. Co. Inc. v. Frank H. Reis Inc.,** 692 N.Y.S.2d
191, 193-95 (App. Div. 1999).  The insureds bear the burden of
showing that such a special relationship exists.  <u>See</u> <u>Murphy</u>, 682
N.E.2d at 976.

The defendants/third-party plaintiffs argue that a special relationship existed between the
defendants/third-party plaintiffs and Lustgarten Inc. such that Lustgarten Inc. owed the

defendants/third-party plaintiffs additional duties beyond that of a normal broker relationship. The defendants/third-party plaintiffs argue that Lustgarten Inc. owed the defendants/third-party plaintiffs the duty to ensure that the supplemental forms for question 6(b) on the 2002-2003 renewal application were provided to PIIC. The defendants/third-party plaintiffs argue that, had Lustgarten Inc. checked the 2002-2003 renewal application for completeness, it would have noticed that there were no supplemental forms provided for question 6(b), and that all supplemental forms provided were labeled as responsive to the Liberty Mutual application. They argue that, had Lustgarten Inc. then notified the defendants/third-party plaintiffs, the defendants/third-party plaintiffs would have been able to provide the supplemental form, giving PIIC notice of the potential Unger claim during the 2001-2002 policy term, and thus providing the possibility that the Unger claim would be covered by the 2001-2002 policy under Condition III, which states that,

> "If, during the POLICY PERIOD, any INSURED first becomes aware
> of a potential claim (i.e. any WRONGFUL ACT or PERSONAL
> INJURY which might reasonably give rise to a CLAIM against
> any INSURED under this policy) and gives written notice of
> such WRONGFUL ACT or PERSONAL INJURY to the Company during
> the POLICY PERIOD, any CLAIMS subsequently made against any
> INSURED arising out of that WRONGFUL ACT or PERSONAL INJURY
> shall be considered to have been made during the POLICY
> PERIOD."

(2001-2002 Policy.)
The defendants/third-party plaintiffs have failed to
demonstrate that the relationship between Lustgarten Inc. and the
defendants/third-party plaintiffs was one of the "exceptional and
particularized situations" that created the additional obligation
for Lustgarten to ensure that the information that the
defendants/third-party plaintiffs provided on their application
forms to PIIC was complete and accurate. The defendants/third-
party plaintiffs have provided no evidence of such a relationship

through, for example, demonstrating that Lustgarten Inc. received compensation for consultation beyond the premium payments, that the defendants/third-party plaintiffs relied on Lustgarten Inc. for expertise regarding the completion of the renewal applications, or that there was an extended course of dealing sufficient to put Lustgarten Inc. on notice that their advice was being specially relied upon.  See Murphy, 682 N.E.2d at 975-96; see also, **Curanovic,** 762 N.Y.S.2d at 151-52; **M & E Mfg.,** 692 N.Y.S.2d at 194-95.

The reliance of the defendants/third-party plaintiffs on Soho Generation of New York, Inc. v. Tri-City Insurance Brokers, Inc., in which the New York State Supreme Court held that a broker that omitted the loss history on an insured's application would stand in the shoes of the insurer and be liable to the insured, is misplaced.  Soho Genertion of New York, Inc. v. Tri-City Brokers, Inc., 683 N.Y.S.2d 31 (App. Div. 1998).  In Soho Generation, the insurance broker, with knowledge of the loss history, prepared the application for the insured, but omitted the loss history, and it was undisputed that the insured had neither authorized nor had knowledge of the omission.  See id. at 32.  Here, it is undisputed that the defendants/third-party plaintiffs prepared, reviewed, and signed their own applications, and that Lustgarten Inc. merely forwarded the prepared applications to PIIC.  Because the defendants/third-party plaintiffs have provided no evidence of a special relationship establishing a duty for Lustgarten Inc. to review the applications for completeness or accuracy, the claim against Lustgarten Inc. cannot survive summary judgment.

The defendants/third-party plaintiffs also argue that Lustgarten Inc. owed the defendants/third-party plaintiffs the duty to report to PIIC all potential claims of which that the defendants/third-party plaintiffs informed Lustgarten Inc.  The defendants/third-party plaintiffs allege that Stengel notified Lustgarten of the potential Unger claim over the telephone between May 9, 2002 and July 3, 2002.  (Def. Stmt. ¶¶ 20-21.) Lustgarten Inc. denies that such notice was given.  The defendants/third-party plaintiffs argue that, had Lustgarten Inc. fulfilled its duty to notify PIIC of the potential Unger claim as soon as they made it known to him in the 2001-2002 policy year, the claim would have been covered under Condition III of the 2001-2002 policy, described above.

The defendants/third-party plaintiffs have not demonstrated that the relationship between Lustgarten Inc. and the

defendants/third-party plaintiffs was one that created the
additional obligation for Lustgarten to report the potential
claims of the defendants/third-party plaintiffs to PIIC.  The
only evidence that the defendants/third-party plaintiffs provide
to support their argument is that, in past dealings, Lustgarten
Inc. had reported the claims of the defendants/third-party
plaintiffs to PIIC, and that Lustgarten Inc. had advised clients
to give notice of claims to Lustgarten Inc. rather than directly
to the insurer.  (Affirmation of Adam M. Stengel in Partial
Opposition to Third-Party Defendant's Motion ("Stengel Opp.") ¶¶
17-19; Lustgarten Dep. at 39; Colon Dep. at 57.)  However, the
claim of the defendants/third-party plaintiffs against Lustgarten
Inc. pertains to Lustgarten Inc.'s alleged failure to report to
PIIC a <u>potential</u> claim, rather than a claim that had already
arisen.[9]  The defendants/third-party plaintiffs provide no
evidence of past practices that would establish a duty on the
part of Lustgarten Inc. to report potential claims of the
defendants/third-party plaintiffs to PIIC.  Because the
defendants/third-party plaintiffs cannot demonstrate the
Lustgarten Inc. breached a duty that it owed to the
defendants/third-party plaintiffs, summary judgment is granted
dismissing the second cause of action asserted against Lustgarten
Inc. by the defendants/third-party plaintiffs.

_____

[9] While, in his affirmation in opposition to Lustgarten Inc.'s Motion for
summary judgment, Stengel states that Lustgarten testified that there was a
fail-safe procedure for notifying insurers of "claims or incidents" (Stengel
Opp. ¶ 18), Lustgarten actually testified to a fail-safe procedure of notifying
Lustgarten about lawsuits that Lustgarten would then report to the insurers.
(Lustgarten Dep. at 39.)

**CONCLUSION**

For the reasons explained above, summary judgment is granted dismissing the first and second causes of action against the defendants/third-party plaintiffs. Summary judgment is denied as to the third and fourth causes of action. Summary judgment is granted dismissing all claims against the third-party defendant.

**SO ORDERED.**

**Dated:     New York, New York**
**July  13 , 2005**

John G. Koeltl
United States District Judge